IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JERRY M. BLEVINS,                      )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )
HON. SARAH STEWART, in                 )
her official and                       )
individual capacity as                 )
Chief Justice of the                   )
Alabama Supreme Court;                 )
HON. WILLIAM B. SELLERS,               )
WILL PARKER, GREG SHAW,                )
TOMMY BRYAN, BRADY E.                  )      CIVIL ACTION
MENDHEIM, JR.& CHRIS                    )
MCCOOL, in their official              )      CASE NO.: _____
and individual capacities              )
as justices of the Alabama             )      DEMAND FOR JURY TRIAL
Supreme Court; ALABAMA                  )
STATE BAR ASSOCIATION;                 )
ROMAN SHAUL, in his                    )
official and individual                )
capacity as General                    )
Counsel; MARK MOODY in his             )
official and individual                )
capacity as Assistant                  )
General Counsel; ALDOS                 )
VANCE, in his official                 )
and individual capacity                )
as Hearing Officer, &                  )
TERRI BOZEMAN LOVELL, in               )
her official capacity as               )
Executive Director of the              )
Alabama State Bar                      )
Association.                           )
                                       )
        Defendants.                    )

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, AND DAMAGES

1

Plaintiff Jerry M. Blevins hereby states this Complaint against Defendants Hon. Sarah Stewart, in her official and individual capacity as Chief Justice of the Alabama Supreme Court; Defendants Hon. William B. Sellers, Will Parker, Greg Shaw, Tommy Bryan, Brady E. Mendheim, Jr., and Chris McCool, in their official and individual capacities as justices of the Alabama Supreme Court; the Alabama State Bar Association; Roman Shaul, in his official and individual capacity as General Counsel at the Alabama State Bar Association; Mark Moody, in his official and individual capacity as Assistant General Counsel at the Alabama State Bar Association; Aldos Vance, in his official and individual capacity as Hearing Officer at the Alabama State Bar Association; and Terri Bozeman Lovell, in her official capacity as Executive Director of the Alabama State Bar Association (collectively "Defendants"), and alleges:

## I. INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment, injunctive relief, and monetary damages concerning disciplinary charges brought against Blevins by the Alabama State Bar Association relative to a fee dispute Blevins had

2

with his client, Elizabeth Citrin.

2.    The Alabama State Bar Association's enabling legislation appears in §§ 34-3-1 through 88, *Code of Alabama* (1975).

3.    Section 34-3-62, *Code of Alabama* (1975)("§ 34-3-62"), reads

> "**Whenever any disagreement or controversy arises between an attorney-at-law and any other person respecting the amount of the compensation to which he or she is entitled by contract or otherwise** and his or her retention of the same out of any funds in his or her hands, **such attorney may by motion in the circuit court or court of like jurisdiction,** of the county of his or her residence, of which such other person shall have notice, **obtain an order of the court that a certain amount is due under such contract or would be reasonable compensation for his or her services; and, when such motion is made and order obtained, such attorney shall not be subject to prosecution, suspension, or removal under this chapter or other penalty therefor;** but nothing herein contained shall affect or destroy any civil action to which any person would be entitled against such attorney respecting the same, or any criminal prosecution to which the accused would be otherwise liable."

(Bold added). This statute is a jurisdiction-stripping statute which is defined as legislation that removes or

3

limits courts' authority to hear specific types of cases. See *Rice v. Chapman*, 51 So.3d 281 (Ala. 2010).[1]

4.   The fee dispute between Blevins and Citrin was brought before, and final judgment rendered by, the Circuit Court of Montgomery County, Alabama pursuant to § 34-3-62.

5.   Notwithstanding the mandates of § 34-3-62, subsequent to resolution of the fee dispute by the Montgomery Circuit Court, the Alabama State Bar Association filed and prosecuted disciplinary charges related to the fee dispute and the Disciplinary Board ("the Board") adjudged Blevins guilty of certain misconduct related to the fee dispute and imposed, inter alia, a public reprimand

---

[1] Alabama Code § 17-16-44 serves as the state's primary jurisdiction stripping statute, specifically targeting election-related proceedings, which reads in relevant part:

> "No jurisdiction exists in or shall be exercised by any judge or court to entertain any proceeding for ascertaining the legality, conduct, or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process, or order from any judge or court, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person…"

4

and suspension of his license to practice law for a period of six (6) months.

6.   The Board's judgment was affirmed by the Alabama Supreme Court.

7.   Blevins contends the Alabama State Bar Association lacked subject matter jurisdiction over the disciplinary charges pursuant to § 34-3-62.

8.   Accordingly, Blevins contends the judgment rendered by the Board, and the Alabama Supreme Court's affirmance of the judgment, is void *ab initio*.

9.   Blevins contends Defendants violated his due process rights under the Fourteenth Amendment to the U.S Constitution as set forth herein with respect to the disciplinary proceeding by acting in direct contravention of § 34-3-62.

## II. PARTIES

10.  Plaintiff Jerry M. Blevins ("Blevins") is over the age of nineteen (19) years and a permanent resident of Shelby County, State of Alabama. At all times mentioned herein, Blevins was a duly licensed attorney engaged in the private practice of law in the State of Alabama.

11.  Defendant Hon. Sarah Stewart ("Stewart") is the

Chief Justice of the Alabama Supreme Court, and a state official. She is sued both in her official and individual capacity.

12. Defendants Hon. William B. Sellers ("Sellers"), Will Parker ("Parker"), Greg Shaw ("Shaw"), Tommy Bryan ("Bryan"), Brady E. Mendheim, Jr. ("Mendheim"), and Chris McCool ("McCool") are adult residents of the State of Alabama, justices of the Alabama Supreme Court, and state officials. These Defendants are sued both in their official and individual capacities.

13. Defendant Alabama State Bar Association ("the Bar") is a state association established by Alabama state law and the Supreme Court of Alabama charged with, inter alia, overseeing practicing attorneys and initiating and prosecuting alleged violations of the *Rules of Professional Conduct*, by and through the Office of General Counsel. The Bar is a governmental entity that is able to sue and be sued.

14. Defendant Roman Shaul ("Shaul") is an adult resident of the State of Alabama, General Counsel at the Alabama State Bar Association, and a state official. He is sued both in his official and individual capacity.

6

15. Defendant Mark Moody ("Moody") is an adult resident of the State of Alabama, Assistant General Counsel at the Alabama State Bar Association, and a state official. He is sued both in his official and individual capacity.

16. Defendant Aldos Vance ("Vance") is an adult resident of the State of Alabama, a Hearing Officer at the Alabama State Bar Association, and a state official. He is sued both in his official and individual capacity.

17. Defendant Terri Bozeman Lovell is the Executive Director of the Bar, and a state official. She is sued in her official capacity as Executive Director of the Bar.

18. The individual Defendants were at all relevant times mentioned herein acting under color of state law in committing the acts described herein.

### III. JURISDICTION AND VENUE

19. This action arises under the Constitution of the United States, including the Fourteenth Amendments and 42 U.S.C. § 1983.

20. This Court has subject matter jurisdiction over Blevins' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

21. This Court has subject matter jurisdiction to

render declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and *Federal Rules of Civil Procedure* 57 and 65.

22. This Court is proper venue pursuant to 28 U.S.C. § 1391(b)(1) because one or more of the named Defendants reside in this judicial circuit. Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim" occurred in this judicial district.

## IV. STATEMENT OF FACTS

### A. General Allegations

23. As recognized by the Alabama Supreme Court, the right to engage in the practice of law in Alabama "is a property right that may be denied only if the denial comports with the procedural due process of law guaranteed by the Alabama and United States Constitutions." *Alabama State Bar v. McBrayer*, 20 So.3d 100 (Ala. 2009) quoting *Ex parte Case*, 925 So.2d 956, 961 (Ala. 2005). Due process includes fair notice to Blevins of which activities are subject to disciplinary action.

24. Under the *Rooker-Feldman* doctrine, federal courts

8

cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court. See *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

25. The *Rooker-Feldman* doctrine does not apply where a party did not have a reasonable opportunity to raise his federal claim in state proceedings. *Powell v. Powell*, 80 F.3d 464 (11th Cir. 1996).

26. Blevins asserts that he did not have a reasonable opportunity to raise the due process claim asserted in this action in the state proceeding, as the jurisdictional issue was decided solely based on whether the express language of § 34-3-62 barred disciplinary action.

27. It was only after the Board's judgment was appealed to the Alabama Supreme Court and Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool affirmed the Board's judgment on the jurisdictional issue that the due process issue raised herein arose. However, Blevins was procedurally barred from raising the due process issue in his subsequent Application for Rehearing

to the Alabama Supreme Court, or in any other manner. See *Ex parte Lovejoy*, 790 So.2d 933 (Ala. 2000).

28. As discussed herein, it is clear the Bar lacked subject matter jurisdiction over the disciplinary charges brought against Blevins pursuant to § 34-3-62, thereby rendering the judgment rendered by the Board, and Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool's affirmance of the judgment, void *ab initio*.

29. Blevins contends that prosecution of the disciplinary charges related to the fee dispute was violative of his due process rights under the Fourteenth Amendment to the U.S. Constitution, based on the express language of § 34-3-62.

30. Blevins requests that this Court hold the judgment of the Bar, and affirmance of the judgment by Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, void *ab initio*, and grant injunctive relief as requested herein.

31. Blevins contends the asserted claims are not barred by immunity as the Eleventh Amendment does not bar prospective relief and void acts confer no immunity.

32. Blevins further asserts Defendants Stewart,

10

Sellers, Parker, Shaw, Bryan, Mendheim, McCool, Shaul, Moody and Vance violated his due process rights in the disciplinary proceeding, and he seeks an award of all monetary damages to which he is entitled by law from them in their individual capacities.

33. As previously noted, the disciplinary charges brought against Blevins stem from his representation of Elizabeth Citrin ("Citrin") relative to a fee-split dispute she had with the Beasley-Allen law firm ("BA"). Blevins will discuss the facts related to the Citrin/BA fee-split dispute first, followed by the facts related to his fee dispute with Citrin, followed by the facts related to the Bar disciplinary proceeding.

**B.    Citrin's Fee-Split Dispute with BA**

34. Citrin has been a licensed attorney in excess of thirty (30) years and is licensed in four (4) states.

35. On May 8, 2014, Citrin filed a civil action on behalf of her clients in a Circuit Court in Alabama ("the civil action").[2]

36. Citrin subsequently associated Attorney Robert

---

[2] The style of the case and the county in which filed has been omitted as the settlement of the civil action was confidential and the undersigned does not wish to breach the confidentiality agreement.

11

Turner as co-counsel in the civil action and agreed to pay him 10% of the contingent fee.

37.    In October 2016, Citrin spoke with Attorney Kendall Dunson ("Kendall"), a partner at BA, about BA becoming involved in the civil action as co-counsel with her and Attorney Turner.

38.    In an email dated October 20, 2016, Kendall proposed two (2) "fee split deals" for Citrin's consideration:

> "1) 45-45-10 on first 350 from Federated and first 150 from Belfour and 60-30-10 thereafter or 2) I believe you told me you had about 75K in expenses so we will pay you 75K immediately and the split would be 60-30-10 for any settlement."

39.    On December 5, 2016, BA and Citrin agreed on "option 2" above ("the 60-30-10 Agreement"), which called for BA to receive 60% of the fee; Citrin to receive 30% of the fee; & Attorney Turner to receive 10% of the fee.

40.    In April 2017, an agreement was reached resolving the civil action.

41.    After the settlement, Citrin objected to the 60-30-10 Agreement because she felt like she had done most of the work and that BA had come in and just got awarded the fruits of her labor. Citrin told Kendall she was unhappy

12

with the fee-split agreement; that she intended on initiating litigation challenging the agreement; began making up reasons to try and avoid paying BA its 60% fee; and falsely accused BA of trying to cheat her out of fees.

42. BA rejected Citrin's challenge of the 60-30-10 Agreement; declined to pay Citrin 30% of the contingent fee; and decided to keep the funds in its trust account until the dispute was resolved.

43. Citrin subsequently contacted at least five (5) attorneys in an effort to find one to assist her with the fee dispute and, after telling each attorney the truth about the dispute, each attorney declined to undertake her representation.

C.    **Citrin's Fee Dispute with Blevins**

44. On April 21, 2017, Citrin contacted Blevins and requested his representation with respect to her fee dispute with BA, and provided Blevins with, inter alia:

    A)    Kendall's email of October 20, 2016, proposing the fee-split options; &

    B)    a letter from Beasley-Allen dated December 5, 2016, along with an envelope in which the letter was supposedly mailed postmarked

January 26, 2017.

45. Blevins did not know Citrin, he had never heard of her, and he had never dealt with her.

46. In inducing Blevins to undertake her representation, Citrin falsely represented that:

A) under the terms of the 60-30-10 Agreement, she was entitled to 60% of the contingent fee with BA receiving 30%;

B) no written communications concerning the fee-split agreement existed with the exception of Kendall's email of October 20, 2016;

C) BA breached the 60-30-10 Agreement by not immediately remitting the $75,000 expense reimbursement payment to her; &

D) a letter received from BA dated December 5, 2016, in an envelope postmarked January 26, 2017, was back-dated in order that BA could try and "steal" an extra 30% of the attorney's fee.

47. In-fact

A) it is undisputed that under the terms of the 60-30-10 Agreement, Citrin understood from day

14

one that BA was to receive 60% of the fee, with her receiving 30%;

B)   Citrin withheld two (2) emails from Blevins which clearly evidenced she was only entitled to 30% of the fee;

C)   BA's delay in issuing the expense reimbursement payment resulted from Citrin's request that payment be delayed for tax reasons; &

D)   BA denied backdating the letter.

48. Based on Citrin's false representations, Blevins agreed to undertake her representation and offered two fee options:

A)   an hourly rate of $200.00; or

B)   a 40% contingency fee on the entire sum recovered.

49. Citrin opted for the 40% contingency fee, and Blevins sent her a written fee agreement to this effect at 8:15 AM on April 24, 2017.

50. Shortly after receipt of the written fee agreement, Citrin contacted Blevins and advised that she had spoken with Kendall and that BA acknowledged owing her

30% of the attorney fee and was sending this money to her, and on this basis requested that the 30% be excluded from the contingent fee. This was a lie.

51. In response, unaware that Citrin was lying, Blevins agreed to exclude the 30% from his contingent fee and at 9:53 AM on April 24, 2017, a revised formal written fee agreement was sent to Citrin, which she executed.

52. Notably, of the fee to be apportioned among Citrin and BA, Citrin was only contractually entitled to 30% of the fee. However, based on Citrin's lies, Blevins believed she was entitled to 60% of the fee. As a result of Citrin conning Blevins into exempting the 30% from his contingent fee, the only way Blevins would receive a fee, for his services was if Citrin was successful in her efforts to "extort" more money from BA than she was contractually owed.

53. On April 25, 2017, Blevins emailed Kendall a letter and based on the lies told by Citrin, asserted:

A)   Citrin's contractual right to 60% of the attorney fee;

B)   BA had breached the fee-split agreement; &

C)   that because of BA's breach of the fee-split

16

agreement that it was only entitled to a fee based on quantum meruit.

54. Thereafter, Blevins exchanged communications with Attorney Austin Huffaker ("Huffaker"), BA's counsel, wherein Blevins repeatedly asserted, again based on the lies told to him by Citrin:

A) Citrin's contractual right to 60% of the attorney fee;

B) BA's breach of the fee-split agreement; &

C) that because of BA's breach of the fee-split agreement that it was only entitled to a fee based on quantum meruit.

55. In response, BA took the position that since Citrin was disputing the fee-split agreement that she would be owed no contingent fee under the agreement, but rather, her fee would also be subject to a quantum meruit analysis.

56. Huffaker also advised on multiple occasions that BA would agree to releasing 30% of the fee to Citrin if Citrin was agreeable to releasing 30% of the fee to BA. Citrin rejected the proposals.

57. Contrary to Citrin's representation, BA did not send the 30% to her; however, Blevins never considered

17

addressing the potential impact this could have on the fee agreement because Blevins thought BA was attempting to cheat Citrin out of her fee and did not want to penalize Citrin for BA's wrongful conduct.

58. All written communication sent by Blevins, and positions stated in those communications, were reviewed, authorized, and directed by Citrin.

59. On July 12, 2017, Citrin and BA mediated the fee dispute.

60. During mediation, the mediator referenced, and produced to Blevins, emails sent to him pre-mediation by Huffaker, authored by Citrin, which clearly evidenced Citrin's understanding that it was BA who was to receive 60% of the contingent fee with Citrin receiving 30%.

61. Upon disclosure of these emails, Blevins became infuriated because Citrin had conned him into pursuing BA, and he felt certain BA thought he was in on her scheme. Citrin could tell by Blevins's reaction to the emails he was angry. Blevins turned to Citrin and asked if she saw the emails and told her to not ever mention again anything about being owed 60%.

62. Mediation concluded roughly 15-20 minutes

thereafter, with BA agreeing to pay Citrin 45% of the settlement as opposed to the 30% Citrin was contractually owed.

63.  Kendall testified at deposition and at trial in the Bar disciplinary proceeding, that absent the Agreement reached at mediation BA had no intention of paying the 30% to Citrin.

64.  On or about August 9, 2017, Blevins received the settlement funds and promptly deposited the funds in his attorney trust account.

65.  On August 9, 2017, Blevins sent a letter to Citrin expressing to her that because BA disputed her entitlement to 30% of the contingent fee that he believed his 40% contingent fee should apply to the settlement as a whole as opposed to merely the sum received in excess of the 30%. Blevins inquired as to whether Citrin was agreeable to this and further advised that if she was not that he would retain the disputed funds in his trust account until such time as the dispute was finally resolved. Blevins further expressed his displeasure with the deceit engaged in by Citrin in inducing him to assume her representation, as follows:

19

"I further want to express my disappointment in you misleading me about the viability of the claims against BA. You withheld emails from me concerning the fee split and further failed to disclose pertinent communications concerning the reason(s) BA delayed in issuing the expense payment to you. I only became aware of these communications at mediation when made aware of them by the mediator. Suffice it to say, had I been aware of these communications, I would not have agreed to assume your representation as you had no viable claim. Simply put, your deception caused me to needlessly accuse BA of multiple acts of wrongdoing without any basis. To say the least, I am not pleased about this."

66. In response to the letter, Citrin called Blevins's office and left two to four messages cursing Blevins, calling him names, and yelling and screaming incoherently. Blevins did not return the calls because he did not think it would be productive to call her back until she had time to calm down where they could discuss it rationally, so he did not call her back promptly.

67. Two days later, on August 11, 2017, Citrin filed suit against Blevins in the Circuit Court of Baldwin County, Alabama, seeking an order restraining Blevins from "spending the settlement funds…"[3]

---

[3] At Citrin's request, the case was ordered sealed.

68. On August 11, 2027, the Baldwin Circuit Court issued a Temporary Restraining Order ("TRO") directing Blevins to maintain the settlement funds in his trust account pending further orders.

69. On August 16, 2017, unaware of the filing of the Baldwin County action or the TRO, Blevins emailed Citrin a letter advising that he was prepared to release with her permission the funds not in dispute and that he would continue to hold the disputed funds in his trust account.

70. Two days later, on August 18, 2017, the Baldwin County Complaint and the TRO were served on Blevins. Blevins complied with the TRO.

71. On August 21, 2017, Citrin and Blevins appeared in the Baldwin Circuit Court. At this hearing, pursuant to Citrin and Blevins' agreement, the Court ordered the distribution of the funds not in dispute and directed that the disputed funds be deposited with the Court. Blevins complied with the Order.

72. After the August 21, 2017, hearing Citrin and Blevins spoke. Citrin acknowledged she had misled Blevins, apologized for her actions, and suggested mediating the fee dispute at the Bar. Blevins agreed to do so.

21

73. Citrin never spoke with Blevins again about mediating at the Bar; instead, she secured counsel and on October 13, 2017, amended her Complaint to assert a declaratory judgment claim regarding the fee dispute.

74. On October 16, 2017, the case was transferred to Montgomery County, Alabama, and assigned to Defendant Shaul, a former employee, shareholder, and partner at BA, who was then serving as a circuit judge.

75. On October 25, 2017, Blevins filed his Answer and Counterclaim wherein he asserted, inter alia, a declaratory judgment claim concerning the fee dispute and a request for judgment pursuant to § 34-3-62.

76. On November 29, 2017, Defendant Shaul entered an Order of recusal noting

> "[t]he undersigned hereby RECUSES from this matter since he was a shareholder at Beasley Allen at the time the underlying dispute arose. The Circuit Clerk is requested to reassign this case to another judge."

77. In May 2018, Defendant Shaul was appointed General Counsel at the Bar.

78. On August 2, 2018, Citrin filed a Motion for Sanctions pursuant to the Alabama Litigation Accountability Act ("ALAA").

22

79. On September 5, 2018, the Montgomery Circuit Court entered judgment on, inter alia, the cross-declaratory judgment claims, and denied Citrin's ALAA motion.

80. Both Blevins and Citrin filed post-judgment motions.

81. On December 5, 2018, the Montgomery Circuit Court denied both Citrin and Blevins's post-judgment motions.

82. Both Blevins and Citrin appealed to the Alabama Supreme Court. Citrin appealed the denial of her ALAA motion and further sought an award of damages for Blevins's alleged frivolous appeal.

83. On December 5, 2018, the Alabama Supreme Court affirmed without opinion the judgment of the Montgomery Circuit Court and denied Citrin's motion for damages.

## D.   Bar Disciplinary Proceeding

84. In 2017, Citrin made a report of suspected misconduct against Blevins with respect to the fee dispute.

85. Defendants Shaul and Moody investigated Citrin's complaint, reported their findings to the Disciplinary Commission ("Commission"), and recommended the filing of formal charges against Blevins, which recommendation was accepted by the Commission.

86. On March 9, 2022, the Bar, through Defendants Shaul and Moody filed Formal Charges against Blevins related to Blevins' representation of Citrin, which contained ten (10) charges.

87. On August 7, 2023, Blevins filed his Motion to Dismiss for Lack of Subject Matter Jurisdiction wherein, pursuant to the express mandates of § 34-3-62, he moved for dismissal of the charges due to lack of subject matter jurisdiction. Defendants Shaul and Moody opposed the motion.

88. On January 16, 2024, Blevins moved the Board to disqualify Defendants Shaul and Moody and moved for an evidentiary hearing on the motion. In particular, Blevins argued neither Defendants Shaul or Moody was a "disinterested" prosecutor, instead, they had a personal interest in the proceeding and an "axe to grind" with Blevins. In particular, Blevins alleged Defendants Shaul and Moody were seeking to retaliate against Blevins for: a) representing Citrin against BA; & b) previously making mandatory reports of suspected misconduct against Defendants Shaul and Moody to the Bar, the Montgomery Circuit Court, and the Alabama Supreme Court. The

24

retaliation included initiating multiple baseless investigations of Blevins; recommending to the Commission the filing of charges against Blevins related to the Citrin fee dispute notwithstanding the lack of subject matter jurisdiction; filing charges against Blevins related to the Citrin fee dispute notwithstanding the lack of subject matter jurisdiction; and filing charges related to the mandatory reports of their misconduct.

89. On January 22, 2024, Defendant Vance issued an Order denying Blevins's Motion to Dismiss for Lack of Subject Matter Jurisdiction, holding in-part

> "The State Bar states that it is not pursuing its misconduct charges under (§ 34-3-62) but is pursuing formal charges alleging Blevins has violated the *Alabama Rules of Professional Conduct* as promulgated by the Supreme Court of Alabama."

90. On January 30, 2024, Defendant Vance summarily denied the motion to disqualify Defendants Shaul and Moody.

91. On March 5, 2024, Defendant Shaul filed a Motion for Leave to Amend Formal Charges, along with Amended Formal Charges, which contained three (3) charges, alleging violations of Rules 1.4 (Communication); 1.5 (Fees); & 8.4 (Misconduct), of the *Alabama Rules of Professional Conduct*,

all of which related to Blevins' fee dispute with Citrin.

92. On March 6, 2024, Defendant Vance granted the Motion for Leave to Amend Formal Charges.

93. On March 9, 2024, Blevins filed his Answer to the Amended Formal Charges.

94. On March 13, 2024, the trial proceeded and was subsequently recessed to April 30, 2024, when the trial was concluded.

95. On September 6, 2024, the Board issued its Report and Order finding Blevins:

A) guilty on Charge I – Violation of Rule 1.4, ARPC, entitled Communication;

B) guilty on Charge II – Violation of Rule 1.5, ARPC, entitled Fees; &

C) not guilty on Charge III – Violation of Rule 8.4, ARPC, entitled Misconduct.[4]

96. As to Charge I, the Board imposed a public reprimand with publication, and as to Charge II imposed a 180-day suspension. A $1,000.00 administrative fee and costs were also assessed.

---

[4] Charge III was primarily premised on mandatory reports of suspected misconduct Blevins made against Shaul and Moody to the Bar, the Montgomery Circuit Court, and the Alabama Supreme Court.

26

97.  On September 20, 2024, Blevins filed his Motion to Alter, Amend or Vacate Judgment, wherein he asserted, inter alia, the Board lacked subject matter jurisdiction over the charges for which he was found guilty pursuant to § 34-3-62, therefore, the Board's judgment was void *ab initio*, and requested a hearing on the motion.

98.  On October 1, 2024, Defendant Vance summarily denied Blevins's Motion to Alter, Amend or Vacate Judgment.

99.  On October 15, 2024, Blevins filed his Notice of Appeal to the Alabama Supreme Court. One of the issues raised in the appeal was Blevins' contention that the Board lacked subject matter jurisdiction over the charges pursuant to § 34-3-62, therefore, the Board's judgment was void *ab initio*. On appeal, Defendants Shaul and Moody made filings with the Alabama Supreme Court opposing Blevins' jurisdictional argument.

100.  On November 13, 2024, the Board issued an Order changing the discipline imposed on Charge I to a public reprimand without publication.

101. On December 19, 2025, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool affirmed the Board's judgment, and in addressing Blevins' jurisdictional

argument premised on § 34-3-62, held in-part

> "[w]hen reading § 34-3-62 in its entirety, it is logical to conclude that, once 'such motion is made and order obtained,' the attorney shall not be subject to prosecution, suspension, removal or other penalty for the wrongful retention of disputed funds… [i]n this case, the Bar did not prosecute Blevins based on any alleged wrongful retention of funds under Rule 1.15… the Bar prosecuted Blevins for his alleged violation of Rule 1.4, regarding communications, and his alleged violation of Rule 1.5, regarding excessive fees."[5]

102. On January 2, 2026, Blevins filed an Application for Rehearing with the Alabama Supreme Court, requesting reconsideration of the affirmance of the judgment based on the Court's erroneous interpretation of § 34-3-62. Defendants Shaul and Moody did not file an opposition to the Application.

103. On February 27, 2026, the Application for Rehearing was overruled, and a certificate of judgment issued.

104. On February 27, 2026, Blevins moved the Alabama Supreme Court to stay its judgment pending the filing and

---

[5] The Bar did not make this argument in its brief to the Alabama Supreme Court in the appellate proceeding. Instead, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool came up with this conclusion on their own initiative.

disposition of this Complaint with this Court, which was denied on the same date.

## V. CLAIMS

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT
### (Against All Defendants)

105. Blevins incorporates by reference the allegations of ¶¶ 1-104 as if set forth fully herein.

106. Attorneys are entitled to due process protections in disciplinary proceedings. *In re Ruffalo*, 390 U.S. 544 (1968).

107. As an attorney, Blevins possesses a constitutionally protected property interest in his license to practice law. *Huckaby v. Alabama State Bar,* 631 So.2d 855 (Ala.1993).

108. The Fourteenth Amendment to the U.S. Constitution forbids Blevins from being deprived of life, liberty or property without due process of law.

109. Due process under the Fourteenth Amendment includes fair notice to Blevins of which activities are subject to disciplinary action.

110. Section 34-3-62 clearly and unequivocally provided notice to Blevins that if his fee dispute with Citrin was

brought before, and resolved, by the circuit court, he shall not be subject to disciplinary action related to the fee dispute without exception.

111. Blevins asserts that § 34-3-62, which Blevins relied on in raising the fee issue with Citrin and in bringing the fee issue before the Montgomery Circuit Court for resolution, barred disciplinary charges related to the fee dispute, therefore, the Bar and Board lacked subject matter jurisdiction over the charges ("the jurisdictional argument").

112. Subject matter jurisdiction concerns a court's power to decide certain types of cases focusing on the nature of the cause of action and the relief sought. *Ex parte BAC Home Loans Servicing, LP*, 159 So.3d 31 (Ala. 2013). This principle relates to a court's inherent authority to deal with the case or matter before it and means not simply jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs. *Ex parte Safeway Ins. Co. of Alabama, Inc.*, 148 So.3d 39 (Ala. 2013). A lack of subject matter jurisdiction renders any resulting judgment void. *Walker County Commission v. Kelly*,

30

262 So.3d 631 (Ala. 2018).

113. Section 34-3-62 is a jurisdiction-stripping statute which creates a class of cases for which the Bar lacks subject matter jurisdiction over, that being fee disputes between attorneys and clients which are brought before and resolved by the circuit court.

114. The Alabama Supreme Court has made clear when subject matter jurisdiction is lacking in the trial court, it has no authority to consider the merits of the appeal; instead, it must dismiss the appeal and vacate the trial court's judgment. *Crutcher v. Williams*, 12 So.3d 631 (Ala. 2008); & *Talladega County Commission v. State ex rel. City of Lincoln*, 303 So.3d 476 (Ala. 2020). In *Crutcher*, Id., quoting *Wilkinson v. Henry,* 221 Ala. 254, 256, 128 So. 362, 364 (1930), the Alabama Supreme Court held it is obligated to vigilantly protect against deciding cases over which it has no jurisdiction because "[i]t would amount to usurpation and oppression for a court to interfere in a matter over which it has no jurisdiction, and its pronouncements in respect thereto would be without force, and its decrees and judgments would be wholly void. This is a universal principle, as old as the law itself."

115. In rejecting the jurisdictional argument, Defendant Vance held that

> "The State Bar states that it is not pursuing its misconduct charges under (§ 34-3-62) but is pursuing formal charges alleging Blevins has violated the *Alabama Rules of Professional Conduct* as promulgated by the Supreme Court of Alabama."

116. In rejecting the jurisdictional argument, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool held that

> "[w]hen reading § 34-3-62 in its entirety, it is logical to conclude that, once 'such motion is made and order obtained,' the attorney shall not be subject to prosecution, suspension, removal or other penalty for the wrongful retention of disputed funds… [i]n this case, the Bar did not prosecute Blevins based on any alleged wrongful retention of funds under Rule 1.15… the Bar prosecuted Blevins for his alleged violation of Rule 1.4, regarding communications, and his alleged violation of Rule 1.5, regarding excessive fees."

(Underlining added).

117. Blevins contends Defendant Vance's ruling was erroneous as § 34-3-62 clearly deprived the Bar of subject matter jurisdiction to address the charges.

118. Blevins contends Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool's interpretation

of § 34-3-62 conflicts with prior holdings of the Alabama Supreme Court regarding statutory interpretation. In *Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County*, 589 So.2d 687 (Ala.1991), the Alabama Supreme Court held that words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. In *Hicks v. State*, 153 So.3d 53 (Ala. 2014), the Alabama Supreme Court held that courts are required to interpret statutory language "to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous." In *DeKalb County LP Gas Co. v. Suburban Gas, Inc.*, 729 So.2d 270, 276 (Ala.1998), the Alabama Supreme Court held

> "It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly

33

inconsistent with the doctrine of separation of powers."

119. Blevins contends § 34-3-62 is not ambiguous in any respect, nor did Defendant Vance or Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool determine it to be ambiguous. The statute makes clear that if an attorney brings a fee dispute with a client before the circuit court and that court resolves the issue, disciplinary action against the attorney is barred related to the fee dispute without exception.

120. Blevins contends Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool's subjective conclusion that § 34-3-62 only bars disciplinary actions for the "wrongful retention of disputed funds" is clearly not what the natural, plain, ordinary, and commonly understood meaning of the words used in the statute states.

121. In interpreting § 34-3-62, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool disregarded the natural, plain, ordinary, and commonly understood meaning of the words used in the statute and have violated the well-established rules of statutory interpretation.

122. Blevins acted in conformity with § 34-3-62, in addressing the fee dispute in the Montgomery Circuit Court, and disciplinary action premised on the fee dispute, which was barred by § 34-3-62, is violative of Blevins' constitutional rights to due process under the Fourteenth Amendment to the U.S. Constitution.

122. Because disciplinary action was barred by § 34-3-62, the Board lacked jurisdiction to consider the charges which renders its judgment, and Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool's affirmance of the judgment, void *ab initio*.

123. Defendants believe they could pursue disciplinary charges related to the fee dispute despite the express language of § 34-3-62.

124. As indicated by the foregoing, a justiciable controversy exists between the parties as to whether the Board and the Alabama Supreme Court lacked subject matter jurisdiction over the disciplinary proceeding pursuant to § 34-3-62.

125. Blevins seeks a declaration that the disciplinary charges were barred by § 34-3-62.

126. Blevins seeks a declaration that the judgment of

35

the Board, and affirmance of the judgment by Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, are void *ab initio* due to lack of subject matter jurisdiction.

127. Blevins seeks a declaration that the judgment of the Board, and affirmance of the judgment by Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, violated Blevins' rights to due process under the Fourteenth Amendment to the U.S. Constitution.

128. The wrongs committed by Defendants are ongoing and the requested relief is prospective.

129. Defendants' exercise of jurisdiction without lawful authority deprived and is presently depriving Blevins of liberty and property interests without due process of law, namely the right to engage in the practice of law in Alabama.

130. Blevins brings this claim against Defendants in their official capacities.

131. Eleventh Amendment immunity does not apply to this claim as Blevins is seeking a declaratory judgment concerning § 34-3-62, and its application to the facts in the Blevins-Citrin fee dispute.

## PRAYER FOR RELIEF

WHEREFORE, THE PREMISES CONSIDERED, Blevins respectfully requests this Honorable Court grant him the following relief:

A)    A judgment declaring that the disciplinary charges against Blevins were barred by § 34-3-62;

B)    A judgment declaring that Defendant Vance violated Blevins' rights to due process under the Fourteenth Amendment to the U.S. Constitution in denying Blevins' dismissal motion and allowing the case to proceed to judgment despite the express mandates of § 34-3-62, and in summarily denying Blevins' post-judgment motion to vacate the Board's void judgment for lack of subject matter jurisdiction;

C)    A judgment declaring that Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool violated Blevins' rights to due process under the Fourteenth Amendment to the U.S. Constitution in affirming the judgment of the Board despite the express mandates of § 34-3-62, and lack of subject matter jurisdiction; &

D)    An order granting Blevins all other, further or different relief to which he may be entitled at law or

in equity, but not limited to, such relief as may be appropriate under 28 U.S.C. § 2202.

## SECOND CLAIM FOR RELIEF
## PERMANENT INJUNCTION
### (Against All Defendants)

132. Blevins incorporates by reference the allegations of ¶¶ 1-131 as if set forth fully herein.

133. In order to obtain a permanent injunction, the moving party must show: "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1128 (11th Cir.2005).

134. Blevins intends on establishing that a) the disciplinary charges were barred by § 34-3-62 as set forth herein as well as Defendants' violation of his due process rights under the Fourteenth Amendment to the U.S. Constitution; b) there is no adequate remedy at law for the violation; & c) irreparable harm will result if injunctive relief is not granted.

135. The wrongs committed by Defendants are ongoing and the requested relief is prospective.

136. Eleventh Amendment immunity does not apply to this claim as Blevins is seeking injunctive relief on a prospective basis for an ongoing violation against a state official in his/her official capacity.

## **PRAYER FOR RELIEF**

WHEREFORE, THE PREMISES CONSIDERED, Blevins respectfully requests this Honorable Court grant him the following relief:

A) Order Defendants the Bar and Vance to vacate the void judgment of the Disciplinary Board;

B) Order Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool to vacate their void judgment affirming the judgment of the Disciplinary Board;

C) Order Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool to order Defendants the Bar and Vance to vacate the Board's void judgment;

D) Order Defendants to immediately reinstate Blevins as an attorney in good standing;

E) Order that Defendants are barred from

initiating any disciplinary proceeding in any way related to the fee dispute;

F)    Order Defendants to take appropriate action to seal all materials in existence in any way related to the disciplinary proceeding from public view;

G)    Order Defendants to take all reasonable and appropriate action to rescind all publications of the disciplinary matter from all sources including but not limited to official publications, websites, online, etc.; &

H)    by granting Blevins all other, further or different relief to which he may be entitled at law or in equity.

### THIRD CLAIM FOR RELIEF
### DUE PROCESS (42 U.S.C. § 1983)
### (Against Defendants Shaul & Moody)

137. Blevins incorporates by reference the allegations of ¶¶ 1-136 as if set forth fully herein.

138. Prior to the Commission authorizing the filing of formal charges against Blevins, Defendants Shaul and Moody conducted investigative work related to Citrin's allegations, to include but not limited to interviewing witnesses, reviewing witness statements, reviewing court

filings, and making recommendations to the Commission based on their investigation.

139. Defendants Shaul and Moody wrongfully, maliciously and for illegitimate reasons gave false information, recommendation, and advice to the Commission, which resulted in the Commission authorizing formal charges to be filed against Blevins.

140. In recommending that the Commission authorize the filing of charges against Blevins, Shaul and Moody withheld from the Commission that charges related to the fee dispute were barred by § 34-3-62.

141. Defendants Shaul and Moody knew prior to the filing of the charges against Blevins, that disciplinary action related to the fee dispute was barred by § 34-3-62.

142. Despite disciplinary action being barred by § 34-3-62, Defendants Shaul and Moody recommended the Commission authorize the filing of charges related to the fee dispute and then filed formal charges against Blevins related to the fee dispute.

143. Defendants Shaul and Moody's actions violated Blevins' due process rights under the Fourteenth Amendment to the U.S. Constitution which right was clearly

41

established such that a reasonable official would have understood that the conduct was unlawful at the time the acts were committed.

144. Blevins brings this claim against Defendants Shaul and Moody in their individual capacities.

145. Absolute prosecutorial immunity does not apply because Defendants Shaul and Moody acted outside their role as advocates in the judicial phase of the disciplinary proceeding in conducting investigative work prior to the filing of the formal charges, and in recommending the filing of formal charges to the Commission which they knew were barred by § 34-3-62.

146. Qualified immunity does not apply because Defendants Shaul and Moody violated Blevins' constitutional right to due process in recommending the filing of formal charges to the Commission which they knew were barred by § 34-3-62, which right was clearly established such that a reasonable official would have understood that the conduct was unlawful.

147. Eleventh Amendment Immunity does not apply as this claim is brought against Defendants Shaul and Moody in their individual capacities.

148. As a proximate result of Defendants Shaul and Moody's actions, Blevins has suffered injury/damage to include but not limited to the wrongful suspension of his license to practice law, economic loss, mental anguish, humiliation, embarrassment.

WHEREFORE, THE PREMISES CONSIDERED, Blevins respectfully requests this Honorable Court grant him the following relief:

A)   A judgment for compensatory and punitive damages in an amount to be determined at trial;

B)   An award of costs and expenses against these Defendants; &

C)   Any and all other relief this Court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
## DUE PROCESS (42 U.S.C. § 1983)
### (Against Defendant Vance)

149. Blevins incorporates by reference the allegations of ¶¶ 1-148 as if set forth fully herein.

150. Defendant Vance served as a Hearing Officer in Blevins' disciplinary proceeding pursuant to Rule 4 of the *Alabama Rules of Disciplinary Procedure*.

151. As the Hearing Officer, Defendant Vance served in a judicial capacity.

152. Pursuant to § 34-3-62, Defendant the Bar and the Board lacked subject matter jurisdiction over the disciplinary charges.

153. Defendant Vance summarily denied Blevins' dismissal motion due to lack of subject matter jurisdiction premised on § 34-3-62; he allowed the disciplinary proceeding to proceed to final judgment; and summarily denied Blevins' motion to vacate the Board's void judgment.

154. In allowing the disciplinary action to proceed to judgment despite clear absence of subject matter jurisdiction, Defendant Vance violated Blevins' due process rights under the Fourteenth Amendment to the U.S Constitution, which rights were clearly established such that a reasonable official would have understood that the conduct was unlawful at the time the act(s) was committed.

155. Blevins brings this claim against Defendant Vance in his individual capacity.

156. Absolute judicial immunity does not apply because Defendant Vance acted in clear absence of subject matter

jurisdiction, and he knew he lacked subject matter jurisdiction at the time of his acts.

157. Eleventh Amendment Immunity does not apply as this claim is brought against Defendant Vance in his individual capacity.

158. As a proximate result of Defendant Vance's actions, Blevins has suffered injury/damage to include but not limited to the wrongful suspension of his license to practice law, economic loss, mental anguish, humiliation, embarrassment.

WHEREFORE, THE PREMISES CONSIDERED, Blevins respectfully requests this Honorable Court grant him the following relief:

A)  A judgment for compensatory and punitive damages in an amount to be determined at trial;

B)  An award of costs and expenses against this Defendant; &

C)  Any and all other relief this Court may deem appropriate.

**FIFTH CLAIM FOR RELIEF**
**DUE PROCESS (42 U.S.C. § 1983)**
**(Against Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool)**

45

159. Blevins incorporates by reference the allegations of ¶¶ 1-158 as if set forth fully herein.

160. Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool served in a judicial capacity on the Alabama Supreme Court in considering Blevins' appeal of the Board's void judgment.

161. In rejecting Blevins' contention that the Board's void judgment was due to be ordered vacated for lack of subject matter jurisdiction, and affirming the void judgment, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, acted in clear absence of all jurisdiction.

162. Instead of dismissing the appeal and ordering the Board's void judgment vacated as mandated by law,[6] Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool Defendants "affirmed" the void judgment.

163. In affirming the Board's void judgment despite clear absence of subject matter jurisdiction, Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool violated Blevins' due process rights under the Fourteenth Amendment to the U.S Constitution, which rights were

_____

[6] See prior opinions issued by Alabama Supreme Court noted at ¶ 114 of this Complaint.

clearly established such that a reasonable official would have understood that the conduct was unlawful at the time the act(s) was committed.

164. Blevins brings this claim against Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, in their individual capacities.

165. Absolute judicial immunity does not apply because Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, acted in clear absence of subject matter jurisdiction, and they knew they lacked subject matter jurisdiction at the time of their acts.

166. Eleventh Amendment Immunity does not apply as this claim is brought against Defendant Vance in their individual capacities.

167. As a proximate result of the actions of Defendants Stewart, Sellers, Parker, Shaw, Bryan, Mendheim, and McCool, Blevins has suffered injury/damage to include but not limited to the wrongful suspension of his license to practice law, economic loss, mental anguish, humiliation, embarrassment.

WHEREFORE, THE PREMISES CONSIDERED, Blevins respectfully requests this Honorable Court grant him the following relief:

A) A judgment for compensatory and punitive damages in an amount to be determined at trial;

B) An award of costs and expenses against the Defendants; &

C) Any and all other relief this Court may deem appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

_____
Jerry M. Blevins
Plaintiff

P.O. Box 380247
Birmingham, Alabama 35238
205.834.8525 (Voice)
E-Mail: ATTYJMBlev@LawOfficeOfJerryMBlevins.com

## VERIFICATION

I, Jerry M. Blevins, state that I have read and reviewed the foregoing Complaint regarding the allegations related to my claims and declare under penalty of perjury

48

pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on : 03/01/2026

Jerry M. Blevins

49